Sidney **DANIELSON, Regional Director, Region 2 of the National Labor Relations Board, For and on Behalf of the National Labor Relations Board, Petitioner,**

v.

**LOCAL 323, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, AFL–CIO, et al., Respondents.**

No. 73 Civ. 425.

United States District Court,
S. D. New York.

March 16, 1973.

Sidney Danielson, Regional Director Region 2 by Bertram T. Kupsinel, N. L. R. B., New York City, for petitioner.

Richard N. Cudrin, Jackson, Lewis, Schnitzler & Krupman, New York City, for charging party.

Ralph P. Katz, Delson & Gordon, New York City, for respondents Laborers Local 275, Masons Local 55 and Painters Dist. Council No. 20.

Patrick Campbell, New City, N. Y., for respondent Local 323.

PIERCE, District Judge.

### MEMORANDUM OPINION

This case came on to be heard upon the verified petition of the Regional Director of the National Labor Relations Board (hereinafter "Board") for a temporary injunction pursuant to Section 10(*l*) of the National Labor Relations Act (hereinafter "Act"), 29 U.S.C. § 160(*l*), pending the final determination of this matter before the Board.

A hearing on the issues raised by the petition was held on February 15, 16, 20, 22, 23, 1973. All parties were afforded an opportunity to be heard, to examine and cross examine, to present evidence bearing on the issues, and to argue on the evidence and the law. The Court has fully considered the petition, evidence, arguments and briefs of counsel. Upon the entire record, the Court makes the following:

### FINDINGS OF FACT

1. Petitioner is the Regional Director, Region 2, of the Board, an agency of the United States, and files this petition for and on behalf of the Board.

2. Jurisdiction of this Court is invoked pursuant to Section 10(*l*) of the Act, 29 U.S.C. § 160(*l*).

3. On January 10, 1973, S.B. Apartments, Inc., (hereinafter "S.B."), pursuant to the provisions of the Act, filed a charge with the Board alleging that respondents above-named, labor organizations, have engaged in, and are engaging in unfair labor practices within the meaning of Section 8(b)(7)(C) of the Act. On January 22, 1973, S.B. filed an amended charge for the purpose of excluding Local 137, International Union of Operating Engineers, AFL–CIO as a respondent. At the hearing on February 22, 1973, counsel for Respondent Local 323, United Brotherhood of Carpenters and Joiners of America, AFL–CIO signed a Stipulation whereby said Local 323 agreed to, *inter alia*, discontinue its current picketing of the charging party. The Court approved this Stipulation on February 22, 1973.

4. The aforesaid charges were referred to petitioner as Regional Director of Region 2 of the Board.

5. There is, and petitioner has, reasonable cause to believe that:

a. The respondents, Laborers Local 275, Masons Local 55 and Painters District Council No. 20, are unincorporated associations in which employees partici-

pate and which exist for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment or conditions of work. At all times material herein, each respondent has had its office and has been engaged in transacting business and in promoting and protecting the interests of its employee members within this judicial district.

b. S.B., a New York corporation, with its main office located at 576 South Road, Poughkeepsie, New York, is the owner of real estate at the corners of Fair Street and Northern Avenue in the village of Cold Spring, New York, (hereinafter called the "job site"), upon which a 63 unit garden apartment project in 7 buildings is being constructed on a 500′ by 500′ area. During the past year, S.B. purchased in excess of $50,000 worth of building materials from Miron Lumber Corporation, Poughkeepsie, New York, (hereinafter called "Miron"), of which in excess of $50,000 of said building materials originated outside the State of New York.

c. James A. Klein, Inc., (hereinafter "Klein"), a New York corporation, with its main office located at 576 South Road, Poughkeepsie, New York, is engaged in the building construction business as a general contractor. During the past year, Klein purchased in excess of $50,000 worth of building materials from Miron, of which in excess of $50,000 of said building materials originated outside the State of New York.

d. S.B. and Klein are, and at all times material herein, have been affiliated businesses with common officers, ownership, directors and operators, and constitute a single integrated business enterprise; the said directors and operators formulate and administer a common labor policy for the aforenamed companies, affecting the employees of said companies.

e. At all times material herein and since October, 1972, Klein has been the general contractor in connection with the construction of apartment houses at the job site.

f. S.B. and Klein, as an integrated business enterprise, are, and have been, at all times material herein, an employer within the meaning of Section 2(2) and 8(b)(7) of the Act and will be hereinafter referred to collectively as the "employer" or "charging party."

g. None of respondents is currently certified as the representative of any of the employer's employees.

h. No charge has been filed with the Board under Section 8(a)(2) of the Act alleging that the employer has unlawfully recognized or assisted any labor organization.

i. On October 31, 1972, respondent Local 323, Carpenters, by its representative Alfred Papo; respondent Local 275, Laborers, by its business manager, Walter Booth; respondent Painters No. 20, by its representative Fred W. Schrimpe; and respondent Local 55, Bricklayers, by its representative Jack J. Gioacchini, and by various other representatives of craft unions, told representatives of the employer that the job at the job site had to be 100 percent union and attempted to have the employer sign collective bargaining agreements. The employer refused to sign any collective bargaining agreements.

j. Thereupon, respondents, acting in concert, embarked on a campaign to force the employer to recognize respondent Local 323, Carpenters and respondent Local 275, Laborers as the representatives of its employees.

k. During the period from November 1, 1972 through about November 30, 1972, respondents, during working hours, picketed the job site, with signs which read, according to the stipulation of counsel:

"Notice to General Public

The General Contractor doing laborers (or carpenters) work on this job does not have a signed collective bargaining contract with Laborers Union 275 (or Local 323, Carpenters)

This sign is in no way meant to encourage employees of any employer to refuse to perform any services whatsoever."

1. During the period from about December 1, 1972 to date, each respondent has picketed the job site on various dates, and collectively, have continually picketed the job site, with from 2 to more than 200 pickets, during working hours, with signs which read, according to the stipulation of counsel:

"To the Public

The Laborer (or Carpenter or Painter or Mason) on this Job for S-B does not receive wages as good as those received by Laborers-Represented by Local Union # 275 (or Carpenters-Represented by Local 323 or Painters-Represented by Painters No. 20 or Masons-Represented by Local 55)

This sign is not directed to any other Employer or to any Employee on this Job"

m. Each of respondents acted in concert in the conduct of the aforesaid picketing, in furtherance of the campaign, as described above in subparagraphs (i) and (j).

n. The aforesaid picketing has been conducted without a petition under Section 9(c) of the Act being filed by any respondent within a reasonable period of time.

o. On or about December 1, 6, 11 and 15, 1972, respondents, by their pickets and by other persons acting in their behalf attempted to and did block entrances to and exits from the job site and attempted to and did prevent employees of the employer and employees of other employers from entering and leaving the said job site with an object to induce the said employees not to cross the picket line established by respondents at the job site.

p. On or about December 11, 1972, on two occasions, a truck driver from Miron Lumber Corporation was prevented by the pickets from making a delivery to the job site.

q. On or about December 15, 1972, truck drivers from Gardner Plumbing and Heating and Amenia Sand and Gravel, Inc. were prevented by the pickets from making deliveries to the job site until police moved the pickets out of the way.

r. Objects of the acts of respondents set forth above in Findings of Fact (k) through (q) were to force the employer to recognize or bargain with Local 323, Carpenters and with Local 275, Laborers as the representatives of its employees, or to force the employees of the employer to accept or select Local 323 Carpenters and Local 275, Laborers as their collective bargaining representatives, notwithstanding that none of respondents is currently certified as the representative of any of the employer's employees and notwithstanding that respondents' picketing has been conducted without a petition under section 9(c) of the Act being filed within a reasonable period of time from the commencement of such picketing.

The Court further finds that:

6. Construction at the employer's job site was not substantially halted by the picketing. Completion of the building project is contemplated by June of 1973. Though occasionally delayed in delivery, supplies have been received.

7. The extra cost to the project which is attributable to the picketing has been estimated to be over $4,000 by the construction superintendent of the employer.

## DISCUSSION

Petitioner contends that respondents conducted a campaign to force the employer to recognize respondent's Local 323, Carpenters, and respondent Local 275, Laborers, as the representatives of its employees. In brief, it contends that the campaign consisted of a series of events by the various representatives following a meeting on October 31, 1972 with the employer at which they asked the employer to enter into a union contract; the employer agreed to employ union personnel but not exclusively; the union personnel then left the meeting after stating "this job is going to be 100% union or it isn't going to go at all."

The events which petitioner claims comprise a campaign of harassment include: tires slashed; telephone wires to employer's field office cut; a bulldozer smashed on the job site; regular, and sometimes massive, picketing at the 500' x 500' site consisting of from 2 to more than 200 pickets at various times from November 1, 1972 to present date; interference with delivery of materials, specifically a load of lumber on December 15, 1972 and a load of ready-mix cement on December 11, 1972; and other alleged occurrences including such minor incidents as name-calling and throwing snowballs at employees.

Respondents contend that organizational or recognitional objects were not their goal at all. Rather, following the October 31st meeting, representatives decided to picket for educational purposes as Section 158(b)(7)(C) permits. Respondents introduced evidence which showed that radio, TV and newspaper coverage was sought and obtained. The respondents sole purpose, they say, was to educate the public of Westchester and Putnam Counties that the employer was paying wages and allowing working conditions which were not up to the standards of the area as achieved by local unions. The unions formed an Area Standards Committee which conducted the educational campaign including the publication of materials for distribution to pickets and the media.

Respondents argue that there is no evidence that any representative ever contacted the employer after October 31 or a sub-contractor regarding union recognition or contacted any employee regarding organizing the workers.

Respondents assert that picketing with signs to publicize "the undercutting of area standards is legal, protected activity"; that the fact that such picketing followed a meeting at which the unions sought recognition is not sufficient evidence to prove that the picketing is for the object of obtaining recognition; and that isolated instances of interferences with deliveries, even when intentional, during a long course of picketing is not sufficient evidence of an intent to violate the Act.

The charging party, on the other hand, states that as long as the Court finds that *an* object of the respondents' picketing was for organizational or recognitional purposes, an injunction must issue even if there was the additional educational purpose.

■ Further, it asserts that where the language appearing on the pickets' signs is inaccurate or untruthful this discredits the respondents' claim that the picketing was solely informational and educational.[1]

■ Viewed as separate and unconnected events, the Court might well find that respondents are correct in their various contentions. But here, looking at the events in their entirety and in their sequence of occurrences, the picture that emerges to this Court is clear-

---

1. The evidence fails to disclose that respondents had any specific knowledge of the wages the employer was actually paying to his employees prior to picketing with signs that read, in December:
   To the Public
   The Laborer (or Carpenter or Painter or Mason) on this Job for S–B does not receive wages as good as those received by Laborers—Represented by Local Union #275 (or Carpenters—Represented by Local 323 or Painters—Represented by Painters No. 20 or Masons—Represented by Local 55)
   This sign is not directed to any other Employer or to any Employees on this Job.

It is difficult to see how the respondents could have known that these signs were either truthful or accurate when respondents apparently did not know what the employer's wage scale was prior to picketing with the signs. It is to be noted that the statute, 29 U.S.C. § 158(b)(7)(C), is explicit in requiring that the public be advised truthfully. And, furthermore, the statutory authorization for educational picketing would appear to limit such activities to "truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization . . . ." No reference is made to truthfully advising the public of sub-standard wages as respondents contend exist here.

ly one of a series of coercive tactics designed to achieve organizational and recognitional objects. The petitioner's claim that the charging party has been subjected to a campaign of harassment is an accurate assessment of the events which followed the October 31st meeting when the employer refused to agree to the job being 100% union. This is so even though concurrent with these events there was a significant educational campaign being conducted via radio, television, and newspapers. In addition, massive picketing was utilized to attract attention to the site and, consequently, to the respondents' contentions.

The Court thus finds that the petitioner had reasonable cause to believe that the respondents have engaged, and are engaging in unfair labor practices in violation of 29 U.S.C. § 158(b)(7)(C), § 8(b)(7)(C) of the Act.

There remains however the question of whether the issuance of an injunction herein would be just and proper under all the circumstances. An injunction is an extraordinary judicial remedy, and in § 10(l) proceedings such as this

> . . . the function of the federal district court consists of determining (1) whether the temporary injunctive relief would be "just and proper" in terms of general equitable principles and (2) whether there is "reasonable cause" for the Regional Director "to believe such [unfair labor practice] charge is true and that a complaint should issue" . . . . McLeod v. Local 25, Internat'l Brotherhood of Electrical Workers, 344 F.2d 634 (2d Cir. 1965).

2. It is not clear whether the three month delay is attributed by the employer to respondents' picketing or not.

3. Thus far the respondents have picketed continuously for 4½ months and have sought and obtained extensive newspaper, radio, and television coverage. To this extent, they have already substantially achieved their avowedly educational goals.

4. This Court is in agreement with the Court in the case of Vincent v. Local Union No. 532, United Brotherhood of Carpenters, Etc., 319 F.Supp. 1146 (W.D. N.Y.1970) wherein it stated:

Respondents contend that the employer has at worst sustained minimal damages as a result of the picketing, asserting that the construction work is on schedule, deliveries have not been interrupted, supplies have been received, and no extra costs have been incurred due to the respondents' activities. On the other hand, the employer asserts that the project was originally scheduled for completion in March and will not be completed until June,[2] deliveries of building materials have been delayed, although eventually delivered, and additional costs exceed $4,000.00.

No irreparable injury to the employer has been alleged or shown to exist since the end of December, 1972. If the injunction should be granted the effect would be to stop the picketing and any continuing harassment of the employer by the respondents. Should it not be granted, the harm to the employer would appear to be relatively insignificant in terms of anticipated completion of the project by early summer and additional costs incurred, if measured by the detrimental effects of the picketing during the past 4½ months.

While the harm to the respondents would appear to be minimal if the injunction were to be granted,[3] the Court is aware of the fact that the granting of injunctive relief is considered to be extraordinary judicial action.[4] The Court is of the opinion that the harm to the employer herein has thus far not been demonstrated to be either great or irreparable, and that consequently it would not be just and proper at this time to grant the injunction

> . . . this court is of the opinion that, under the circumstances presented here, in terms of general equitable principles, the issuance of a temporary injunction would not be just and proper. Generally, the issuance of an injunction is an extraordinary remedy. There is no threat of a serious interference with the construction project. No stoppages have occurred since about the 20th of October, and it generally appears that the status quo will continue . . . .

sought—although the issue is considered to be a close question.

In light of the foregoing findings of fact and discussion, the Court draws the following conclusions of law:

## CONCLUSIONS OF LAW

This Court has jurisdiction of the parties and subject matter of this proceeding, and under § 10(*l*) of the Act, 29 U.S.C. § 160(*l*), is empowered to grant injunctive relief.

There is, and petitioner has reasonable cause to believe that:

Respondents are labor organizations within the meaning of §§ 2(5), 8(b), and 10(*l*) of the Act.

S.B. and Klein, as an integrated business, is an employer engaged in commerce within the meaning of §§ 2(6), and (7) of the Act.

Respondents have engaged in, and are engaging in unfair labor practices within the meaning of § 8(b)(7)(C) of the Act, 29 U.S.C. § 158(b)(7)(C).

The Court further concludes that:

Petitioner has failed to prove that irreparable harm or damage will result if an injunction is not granted.

The Court has thus concluded that it would not be just and proper to grant an injunction at this time. However, should the unfair labor practice continue to the substantial detriment of the employer, or should the circumstances change in such a way as to provide a basis for establishing that the employer is suffering irreparable harm, this Court will entertain the appropriate motions on the limited question of the propriety of an injunction in light of the changed circumstances. Therefore, the petition for an injunction is denied without prejudice to renew before this same Court, should it become necessary.

Ordered, that as to Respondents, Laborers, Masons, and Painters, the application for an injunction is denied at this time.